

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

February 8, 1977

The Honorable Ronald L. Wilson
Criminal District Attorney
405 County Courthouse
Galveston, Texas   77550

Opinion No. H-940

Re:  Legality of slot
machines on a cruise ship
calling at a Texas port.

Dear Mr. Wilson:

You have requested our opinion regarding the presence of slot machines aboard a cruise ship docked at a Texas port. You state that the operators of a certain cruise ship have proposed to visit the Port of Galveston to pick up passengers enroute to foreign destinations.  One room of the vessel will contain approximately 50 slot machines.  You ask if the owners and operators of the vessel may place themselves in violation of Texas law under the following alternative sets of facts:

> 1.  If the slot machines are electronically disabled and thus inoperable at all times during which the vessel is within the territorial jurisdiction of the State of Texas; and

> 2.  If the room in which the slot machines are located is sealed off by officials of the United States Bureau of Customs at all times during which the vessel is within the territorial jurisdiction of the State of Texas.

Section 47.06 of the Penal Code provides, in pertinent part:

> (a)  A person commits an offense if he knowingly owns, manufactures, transfers, or possesses any gambling device that he knows is designed for gambling purposes or any equipment that he knows is designed as a subassembly or essential part of a gambling device.  (Emphasis added).

"Gambling device" is defined as

> any mechancial contrivance that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance.  Penal Code, § 47.01(3).

You have suggested that a slot machine which has been electronically disabled so that none of its parts move may not be a "mechanical contrivance" within the meaning of section 47.01.

Some support for this contention may be found in Hightower v. State, 156 S.W.2d 327 (Tex. Civ. App. -- Dallas 1941, writ ref'd).  In that case, the District Attorney of Dallas County had sought the destruction of seven slot machines under articles 619 and 637 of the former Penal Code.  Five of the devices, however, had no automatic pay-off mechanism.  The court held that, as a result, the prosecutor must demonstrate that these machines were "being used for gaming purposes at the time of seizure," since a slot machine "is not per se a gambling device."  Hightower v. State, supra at 329.  The design of the machine, the court said, was immaterial -- "it is the game or character of play on it that determines its status."  Id.

In 1951, however, article 642a was added to the Penal Code.  That statute included a definition of "slot machine" as one

> designed and manufactured or adapted . . . so that when operated it may deliver, as the result of an application of an element of chance, any money or property . . . . (Emphasis added).

By virtue of the "designed and manufactured" language of article 642a, the court held in State v. One Slot Machine, 305 S.W.2d 386 (Tex. Civ. App. -- San Antonio 1957, no writ), that a slot machine might legally be confiscated even though, at the time of seizure, certain of its parts had been disconnected and, as a result thereof, it could not at such time award free games. See also Attorney General Opinion M-773 (1971).

When the new Penal Code became effective in 1974, the "designed and manufactured" language of article 642a was omitted from the definition of "gambling device." It was, however, retained in the language describing the substantive offense. Article 47.06 prohibits the possession of "any equipment that [the actor] knows is designed as a subassembly or essential part of a gambling device." If a person has in his possession a slot machine which has been electronically disabled, he also possesses the component parts thereof. Such component parts need only have been "designed as a subassembly or essential part of a gambling device." (Emphasis added). Under the terms of One Slot Machine, supra, so long as it can be demonstrated that a piece of equipment was so designed, its operating condition at the time of seizure is irrelevant. Thus, it is our opinion that a slot machine which has been electronically disabled and rendered inoperable is not necessarily removed thereby from the scope of the offense described in section 47.06 of the Penal Code.

You also ask whether the owners and operators of the vessel would be in violation of Texas law if the room in which the slot machines are located is placed under the seal of the United States Bureau of Customs while the vessel is in Texas waters. In Hostetter v. Idlewild Liquor Corp., 377 U.S. 324 (1964), the United States Supreme Court held that the State of New York was not empowered "to prohibit absolutely the passage of liquor through its territory, under the supervision of the United States Bureau of Customs acting under federal law, for delivery to customers in foreign countries." Id. at 329. The Bureau of Customs did not exercise such "supervision," however, merely under the general authority of the federal government to regulate foreign commerce, but under the specific terms of the Tariff Act of 1930, 19 U.S.C. § 1311. The conduct which the Court proscribed was New York's attempt "totally to prevent trans-actions carried on under the aegis of a law passed by Congress in the exercise of its explicit power under the Constitution to regulate commerce with foreign nations." 377 U.S. at 334. (Emphasis added).

By contrast, we have been cited to no authority which would permit the Bureau of Customs to obtain exclusive jurisdiction over the slot machines while the vessel is in Texas waters by the mere act of sealing off the room in which the machines are located. It would in fact appear that the transportation of the slot machines into Texas waters could constitute a violation of federal law:

> It shall be unlawful knowingly to transport any gambling device to any place in a State, the District of Columbia, or a possession of the United States from any place outside of such State, the District of Columbia, or possession: Provided, That this section shall not apply to transportation of any gambling device to a place in any State which has enacted a law providing for the exemption of such State from the provisions of this section, or to a place in any subdivision of a State if the State in which such subdivision is located has enacted a law providing for the exemption of such subdivsion from the provisions of this section, nor shall this section apply to any gambling device used or designed for use at and transported to licensed gambling establishments where betting is legal under applicable State laws: Provided further, That it shall not be unlawful to transport in interstate or foreign commerce any gambling device into any State in which the transported gambling device is specifically enumerated as lawful in a statute of that State. 15 U.S.C. § 1172.

A "gambling device" under federal law includes any slot machine "designed or manufactured primarily for use in connection with gambling . . ." as well as "any subassembly or essential part" thereof. 15 U.S.C. § 1171(a)(2) and (3). Thus, since we are aware of no statute or procedure by which the Bureau of Customs might seal off a room containing slot machines aboard a vessel while the vessel is within the territorial jurisdiction of the State of Texas, and since the transportation of such machines into Texas waters may constitute a separate violation under federal law, we need not address the question posed by your second alternative set of facts.

## S U M M A R Y

A slot machine which has been elec-
tronically disabled and rendered
inoperable is not necessarily removed
thereby from the scope of the offense
described in section 47.06 of the Penal
Code.  We are aware of no statute or
procedure by which the Bureau of Customs
might seal off a room containing slot
machines aboard a vessel while the
vessel is within the territorial jurisdiction
of the State of Texas.  Furthermore, the
transportation of such machines into
Texas waters may constitute a separate
violation under 15 U.S.C. § 1172.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb