William E. Clayton, Dist. Atty., Edwin F. Berliner, First Asst. Dist. Atty., El Paso, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

This is an extradition case. Appellant purports to appeal after a hearing in a habeas corpus proceedings before the judge of the 34th Judicial District of El Paso County in which he was remanded to custody to be delivered to the agent of the demanding state.

The record contains no final judgment. Therefore this court is without jurisdiction of the appeal. Ex parte Sharpe, Tex.Cr.App., 331 S.W.2d 747; Ex parte Saucier, Tex.Cr.App., 233 S.W.2d 147.

The appeal is dismissed.

On Motion to Reinstate the Appeal

WOODLEY, Judge.

Supplemental transcript has been forwarded containing the judgment remanding appellant to custody for extradition and the appeal is reinstated.

The State offered in evidence the warrant of the Governor of Texas, together with the requisition from the Governor of California and supporting papers, from which it is made to appear that appellant stands charged by indictment in Los Angeles County with sale of narcotics on March 5 and March 14, 1958.

The "mug shot" or photograph accompanying the requisition was shown to be a photograph of the appellant herein.

By bill of exception it is shown that appellant contended that he was not in the State of California in the month of March 1958, but was at that time in Texas.

Appellant did not testify or offer any witnesses, but contends that in view of his claim that he was in Texas at the time of the commission of the offenses in California, the evidence in insufficient to properly identify him.

Records of the Department of Public Safety and of the El Paso Police Department and of the F.B.I. were introduced without objection, none of which support appellant's claim that he was in jail in El Paso at the time of the commission of the offenses in California for which his extradition was sought.

If the issue of appellant's identity or his presence in the demanding state was raised, the trial judge properly resolved the issue against appellant.

The judgment is affirmed.

**Ervin SCHEPPS, Appellant,**

v.

**CITY OF EL PASO et al., Appellee.**

**No. 5407.**

Court of Civil Appeals of Texas.

El Paso.

Aug. 3, 1960.

Rehearing Denied Oct. 5, 1960.

Wellington Chew and George Rodriguez,. El Paso, for appellant.

Travis White, City Atty., Robert J. Galvan, Bert Williams, Asst. City Attys., El Paso, for appellee.

ABBOTT, Justice.

This is a combination of two suits, one by a police officer of the City of El Paso, Texas, to destroy certain alleged gambling equipment and confiscate money; the other a suit by Ervin Schepps, praying for the return of $3,675 seized from him. The two suits were properly consolidated, and, from a judgment of the trial court confiscating a blanket and the money, and ordering two pair of dice destroyed, appellant has perfected his appeal and is properly before this court.

The facts are: Several persons, appellant included, on March 16, 1959, agreed to shoot dice with each other. They assembled at a house, owned by the mother of one of the players, but vacant at that time, in order to accomplish their game.

An officer of the vice squad of the El Paso Police Department, after peeping through a window of the house, and after

observing the dice game, obtained a search warrant and with the help of other officers, raided the house, and arrested the three occupants upon a charge of gambling. Also, the officers seized two pair of dice, one blanket, and $3,675 in cash. The testimony varies between the witnesses as to whether the money was seized from the table upon which the game was being played, or from the pockets of Ervin Schepps, appellant. The testimony is clear that the house in question, at no previous time, had the reputation of a gambling house, or been used as such.

The trial court made findings of fact and conclusions of law, but only those pertinent to this opinion are listed here.

### Findings of Fact

(2) That at this time (of the raid) the Defendant Schepps was conducting a crap game at 3629 Polk Street.

(3) That two sets of dice, one blanket, and $3,675 in money were seized by the police officers at the above premises, and that said dice, blanket and money were being used in this game.

(4) That the money so seized was not in the pockets of any of the participants, but that said money was on the table as a bank used by defendant Schepps.

(7) That said premises, constructed for resident use, was on the day of the raid rented and used solely for gambling purposes.

### Conclusions of Law

(5) That the money was seized with the blanket and dice which constituted equipment or paraphernalia of a gambling house.

(6) That the premises located at 3629 Polk Avenue, in El Paso, Texas was a gambling house.

(8) That the money seized was part of the bank of the crap game.

From the judgment of the trial court, appellant has assigned five points of error:

"(I) Because the court should have sustained Respondent Schepp's plea in abatement, which was timely filed and which set out to the court that Respondent Schepps was claiming by an independent suit, title and ownership in said money, which should thereby afforded him a full hearing on the merits and not a mere summary hearing as provided for in Article 636 and 637 of the Penal Code of the State of Texas. The Respondent would thereby have been granted a full and complete trial, with the right of the intervention of a jury, if he so desired.

"(II) That Article 636 and 637 and succeeding articles of said penal code, do not contemplate giving police officers or anyone, the right to seize money used or not used in a gambling game under the facts and circumstances, as developed before the court, and that said articles do not authorize the court to confiscate or dispose of same as was done in the judgment by the court. Said articles 636 and 637 contemplate and only authorize confiscation of money found in gambling devices such as slot machines, pin-ball machines, etc., and not money whose title and possession are undisputed as in this case.

"(III) That the money involved in a gambling game as disclosed by the evidence herein, was not in fact *used* in said game as a matter of law but at most was being used to pay off lost bets already consummated. That as used herein, if at all, it was used as a medium of exchange and not as gambling paraphernalia.

"(IV) That the city of El Paso, acting through its vice squad and city attorneys, by their actions herein, have invoked the jurisdiction of this Honorable Court, for the expressed purpose of exacting new and additional penalties

against a citizen of this city. That said intention is expressed by their pleadings and statements and to permit same, would in effect, allow them in the future, as they have done in the past, to unreasonably seize and confiscate money under guise of these statutes, which do not so authorize and were not so intended, and that said additional penalties can vary, depending on the amount possessed by an individual and to allow the two articles to so penalize an individual would constitute deprivation of property without due process of law, and to allow seizure of varying amounts of money of individuals dependent upon circumstances or chance, would deny them equal protection of the law.

"(V) That even if Article 636— and 637 did authorize police officers to seize money, the evidence herein is wholly insufficient to show that the site of said seizure was in fact a gambling house, which is a sine quoa non to the application of Article 636 and the court erred in holding 3629 Polk Avenue was a gambling house."

■ We can find no merit to Point I. The suit for condemnation was filed by the City prior to the suit filed by appellant in another court. At the time the case was called, appellant announced ready for trial on the merits, and so proceeded.

The last four points shall be grouped together and discussed in that manner.

The statutes governing the seizure, condemnation and confiscation of property seized by officers are Articles 636 and 637 of the Vernon's Ann.Penal Code. Article 637 must be read in conjunction with Article 636. Such property seized must be gambling equipment per se, or equipment and paraphernalia for a gambling house. Article 637, section 3, Vernon's Ann.Penal Code. Money found in gambling devices, that is, slot machines, marble boards, etc., may be legally seized with the devices. We

believe this is clearly shown as a matter of policy in an opinion of the Attorney General of Texas, 1940, No. 0–1917; Williams v. State of Texas, Tex.Civ.App., 283 S.W.2d 444; Roberts v. Gossett, Tex.Civ.App., 88 S.W.2d 507. One of the principles behind the destruction of these machines is that they are an open invitation to the public to participate, and that the otherwise lawful devices (excepting slot machines) are actually used in gambling. Flener v. City of Dallas, Tex.Civ.App., 272 S.W.2d 643.

Money is not gambling equipment per se. Jones v. Pettigrew, Tex.Civ.App., 328 S.W.2d 450. In the present case, there is no identification of the money used at any time. The officers testified that they saw money on the table and saw money exchange hands, but there is insufficient evidence to identify any of the money actually used, and certainly insufficient evidence to support a finding that the $3,675 in question was used, in part or in toto, as gambling paraphernalia. In this connection, we are impressed with a statement found in 79 A.L.R. 1000, at page 1003, Dorrell v. Clark, from the Montana Supreme Court, 90 Mont. 585, 4 P.2d 712, at page 714:

"In the ordinary gambling game wherein money changes hands, *the winner undoubtedly reduces it to possession,* but where the money is but entrapped as in a slot machine the 'possession' is at least qualified; it has never come into the hands of the operator and, as shown above, remains a part of the machine until released."

■ Our courts have held consistently that the statutes pertaining to the confiscation of equipment or gambling paraphernalia that the same must be seized in a gambling house. Davis v. State, Tex.Civ. App., 165 S.W.2d 757; Art. 625, Vernon's Ann.Penal Code; Art. 637, Vernon's Ann. Penal Code; Callison v. State, Tex.Civ. App., 146 S.W.2d 468; Art. 636, Vernon's Ann.Penal Code.

The courts have gone farther in defining a gaming house, as in Davis v. State, supra [165 S.W.2d 758]:

"The term 'gaming house', as used in the statute, is such a house as is mentioned in Article 625, P.C., namely, a building, place, or room which is kept for the purpose of being used as a place to bet or wager, or to gamble with cards, or to keep or exhibit for the purpose of gambling, any bank, table, alley, machine, wheel, or device whatsoever." Francis v. State, 90 Tex.Cr.R. 67, 233 S.W. 974; Lewis v. State, 136 Tex.Cr. R. 105, 124 S.W.2d 121.

It is contended by the appellee, and found by the trial court in its Conclusions of Law, that the house in this present case was such a gambling house. There is no testimony that this house had ever been used as a gambling house before or after the date of the raid. Numerous cases in Texas have held that one occasion of gambling in a house will not be sufficient evidence for a finding of gambling house or gaming house. Wheelock v. State, 15 Tex. 260; Anderson v. State, Tex.Cr.App., 12 S.W. 868.

A further test of a gambling house is whether or not the house is open to the public for the purpose of gambling. Davis v. State, 68 Tex.Cr.R. 259, 151 S.W. 313; Morgan v. State, 42 Tex.Cr.R. 422, 60 S.W. 763.

Further, the evidence in this case does not show that any gambling equipment, as indicated by the statutes, was being displayed for the purpose of enticing players. In Campbell v. State, Tex.Cr.App., 72 S.W. 396, and the cited cases, we believe that a banking game, where one person kept or exhibited a game, and bet against all comers, is amply defined. The testimony in the present case shows that the premises did not belong to the appellant, nor did the dice. The officers testified that they had observed all three occupants of the house handling both money and dice. The covering of the table was an ordinary blanket, and not a house lay-out. Grimes v. State of Texas, Tex.Cr.App., 327 S.W.2d 583. We believe that the trial court had insufficient evidence before it to sustain its finding that appellant was banking this game, and that the money seized was part of the bank of the crap game. This appears to be an ordinary crap game, in which, at the time of the raid, there were only two participants.

The Conclusions of Law by the Trial Court that the residence was a gambling house, and that the money seized was gambling equipment or paraphernalia, cannot stand in view of the above cases and the language of Davis et al. v. State, Tex.Civ. App., 165 S.W.2d 757, which we believe to be the law governing this matter. Since there is no claim of ownership of the dice and blanket, the trial court's judgment as to them must be affirmed, but the judgment of the trial court as to the $3,675 is reversed and rendered, with the money to be returned to appellant.